UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>**SPARKS ELECTRIC, LLC**<br><br>Debtor. | Case No. 22-19058 (JKS)<br><br>Hon. John K. Sherwood<br><br>Chapter 11 (Subchapter V Small Business) |

## SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of Sparks Electric, LLC, and to seek your vote to accept the Plan. You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY NO LATER THAN SEVEN DAYS PRIOR TO THE CONFIRMATION HEARING.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY SEVEN DAYS PRIOR TO THE CONFIRMATION HEARING. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**

**CARLOS D. MARTINEZ, ESQ., 1599 HAMBURG TURNPIKE, WAYNE, NEW JERSEY 07470 (EMAIL: CMARTINEZ@SCURA.COM).**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____ (TBD) IN COURTROOM OF THE HONORABLE JOHN K. SHERWOOD AT THE UNITED STATES BANKRUPTCY COURT, 50 WALNUT STREET, 3RD FLOOR, NEWARK, NJ 07102.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Date:  February 9, 2023

Proponent:
/s/ Manuel Botero
   Manuel Botero
   *Managing Member, Sparks Electric, LLC.*

**TABLE OF CONTENTS**

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS ............................. 1

ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR ........... 4

1.1 Nature of the Debtor's Business........................................................................ 4

1.2 History of Business Operations of the Debtor ................................................. 4

1.3 Filing of the Debtor's Chapter 11 Case........................................................... 4

1.4 Legal Structure and Ownership........................................................................ 4

1.5 Debtor's Assets ................................................................................................. 4

1.6 Debtor's Liabilities........................................................................................... 4

1.7 Current and Historical Financial Conditions................................................... 4

1.8 Events Leading to the Filing of the Bankruptcy Case..................................... 5

1.9 Significant Events During the Bankruptcy Case.............................................. 5

1.10 Projected Recovery of Avoidable Transfers .................................................... 5

ARTICLE 2: THE PLAN................................................................................................ 5

2.1 Unclassified Claims.......................................................................................... 6

2.2 Classes of Claims and Equity Interests ........................................................... 8

2.3 Estimated Number and Amount of Claims Objections................................... 14

2.4 Treatment of Executory Contracts and Unexpired Leases............................. 14

2.5 Means for Implementation of the Plan ........................................................... 14

2.6 Payments ......................................................................................................... 15

2.7 Post-Confirmation Management ..................................................................... 15

2.8 Tax Consequences of the Plan ........................................................................ 15

2.9 Projections in Support of Debtor's Ability to Make Payments Under Proposed Plan... 15

ARTICLE 3: FEASIBILITY OF PLAN........................................................................ 15

3.1 Ability to Initially Fund Plan ......................................................................... 15

3.2 Ability to Make Future Plan Payments and Operate Without Further Reorganization . 15

ARTICLE 4: LIQUIDATION ANALYSIS................................................................... 16

ARTICLE 5: DISCHARGE........................................................................................... 16

ARTICLE 6: GENERAL PROVISIONS ...................................................................... 16

6.1 Title to Assets.................................................................................................. 16

6.2 Binding Effect ................................................................................................. 17

6.3 Severability...................................................................................................... 17

i

6.4     Retention of Jurisdiction by the Bankruptcy Court ........................................................ 17

6.5     Captions ........................................................................................................................ 17

6.6     Modification of Plan ..................................................................................................... 17

6.7     Final Decree .................................................................................................................. 18

**ARTICLE 7:  ATTACHMENTS** ............................................................................................ 18

**ARTICLE 8:  FREQUENTLY ASKED QUESTIONS** ........................................................ 18

**ARTICLE 9:  DEFINITIONS** ................................................................................................ 19

## <u>SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS</u>

### <u>Administrative Expenses</u>

1. <u>Joseph L. Schwartz - Subchapter V Trustee</u>
   a. Estimated Amount Owed: $10,000.00
   b. Proposed Treatment: Paid on the Effective Date of the Plan pursuant to Order authorizing fees.

2. <u>Scura, Wigfield, Heyer, Stevens & Cammarota, LLP</u>
   a. **Estimated Amount Owed**: $25,000.00
   b. **Proposed Treatment**: Paid on the Effective Date of the Plan pursuant to Order authorizing fees.

### <u>Priority Tax Claims</u>

1. <u>Department of Treasury – Internal Revenue Service</u>
   a. **Estimated Amount Owed**: $36,951.07
   b. **Proposed Treatment**: This creditor filed an estimated tax claim for the Year of 2022. The Debtor is in the process of filing its taxes in order to have the Internal Revenue Service amend its claim. Accordingly, the Debtor shall pay the holder of this claim in accordance to its Amended Proof of Claim as follows: Commencing on the first day of the first month following the Effective Date of the Plan (the "Initial Payment") and quarterly thereafter for a total of twenty (20) quarters, payment will be made to the holder of this claim in the amount of 1/20th of its Allowed Claim including interest calculated at 7.25% interest per annum.

2. <u>State of New Jersey – Division of Taxation</u>
   a. **Estimated Amount Owed**: $4,678.23
   b. **Proposed Treatment**: This creditor filed an estimated tax claim for the year of 2022. The Debtor is in the process of filing its taxes in order to have the State of New Jersey amend its claim. Accordingly, the Debtor shall pay the holder of this claim in accordance to its Amended Proof of Claim as follows: Commencing on the first day of the first month following the Effective Date of the Plan (the "Initial Payment") and quarterly thereafter for a total of twenty (20) quarters, payment will be made to the holder of this claim in the amount of 1/20th of its Allowed Claim including interest calculated at 7.25% interest per annum.

### <u>Secured Claims</u>

1. <u>GFE NY, LLC</u>
   a. **Estimated Amount Owed**: $117,335.00
   b. **Proposed Treatment**: The holder of this claim shall be paid in the amount of its Allowed Secured Claim including interest calculated at 7.00% interest per annum which shall be paid as follows: Commencing on the

Effective Date of the Plan (the "Initial Payment") and quarterly thereafter for twenty (20) consecutive quarters, the Debtor shall make quarterly payments to the Class One claim holder as per below:

    i. Year 1: $27,942.52 ($6,985.63 per quarter)
    ii. Year 2: $27,942.52 ($6,985.63 per quarter)
    iii. Year 3: $27,942.52 ($6,985.63 per quarter)
    iv. Year 4: $27,942.52 ($6,985.63 per quarter)
    v. Year 5: $27,942.52 ($6,985.63 per quarter)

2. <u>Apex Funding Source, LLC</u>
   a. **Estimated Amount Owed**: $263,847.00
   b. **Proposed Treatment**: In accordance with sections 506(a), 506(d) of the Bankruptcy Code the Class Two claim will be bifurcated to an Allowed Secured Claim in the amount of $47,473.54 (payable at an interest rate of 7%) and a General Unsecured claim in the amount of $216,373.46. The Allowed Secured Claim will be paid as follows: Commencing on the Effective Date of the Plan (the "Initial Payment") and quarterly thereafter for twenty (20) consecutive quarters, the Debtor shall make quarterly payments to the Class Two claim holder as per below:
       i. Year 1: $11,286.28 ($2,821.57 per quarter)
       ii. Year 2: $11,286.28 ($2,821.57 per quarter)
       iii. Year 3: $11,286.28 ($2,821.57 per quarter)
       iv. Year 4: $11,286.28 ($2,821.57 per quarter)
       v. Year 5: $11,286.28 ($2,821.57 per quarter)

   c. The General Unsecured portion of this claim ($216,373.46) shall be paid together and in accordance with General Unsecured Creditors (Class Eight).

3. <u>Clover Commercial Corporation</u>
   a. **Estimated Amount Owed**: $1,953.25
   b. **Proposed Treatment**: The Debtor will leave unaltered the Secured Creditor's contractual, legal, and equitable rights with respect to its collateral. Debtor shall continue making payments to the Class Three claim holder in accordance with the pre-petition financing agreement between the Debtor and Class Three claim holder.

4. <u>Toyota Financial Motor Credit Corporation</u>
   a. **Estimated Amount Owed**: $20,015.00
   b. **Proposed Treatment**: The Debtor will leave unaltered the Secured Creditor's contractual, legal, and equitable rights with respect to its collateral. Debtor shall continue making payments to the Class Four claim holder in accordance with the pre-petition financing agreement between the Debtor and Class Four claim holder.

5. <u>Forever Funding, LLC</u>
   a. **Estimated Amount Owed**: $247,335.00

    b. **Proposed Treatment**: The Debtor asserts that the Forever Funding's lien is an unperfected lien on the assets of the Debtor and subject to the trustee's avoidance powers pursuant to Section 544(a)(3). Therefore, Class Five's lien will be declared void pursuant to Section 544(a)(3) & Section 506(a) and (d) of the Bankruptcy Code. Therefore, the entirety of the claim in this class will be paid together and in accordance with General Unsecured Creditors (Class Eight).

6. <u>CT Corporations Systems</u>
   a. **Estimated Amount Owed**: Unknown
   b. **Proposed Treatment**: In accordance with the Liquidation Analysis (Exhibit D), there is no equity in the Debtor's assets beyond the claims of the Class One and Class Two claim holders. Therefore, the Class Six claim is fully undersecured. In accordance with sections 506(a) and (d) of the Bankruptcy Code the Allowed Claim will be fixed to an amount of $0 and will be paid nothing as a secured creditor. Therefore, Class Six's lien will be declared void pursuant to Sections 506(a) and (d) of the Bankruptcy Code. Therefore, the entirety of the claim in this class will be paid together and in accordance with General Unsecured Creditors (Class Eight).

7. <u>Corporation Service Company</u>
   a. **Estimated Amount Owed**: Unknown
   b. **Proposed Treatment**: In accordance with the Liquidation Analysis (Exhibit D), there is no equity in the Debtor's assets beyond the claims of the Class One and Class Two claim holders. Therefore, the Class Seven claim is fully undersecured. Therefore, pursuant to sections 506(a) and (d) of the Bankruptcy Code the Allowed Claim will be fixed to an amount of $0 and will be paid nothing as a secured creditor. Therefore, Class Six's lien will be declared void pursuant to Sections 506(a) and (d) of the Bankruptcy Code. Therefore, the entirety of the claim in this class will be paid together and in accordance with General Unsecured Creditors (Class Eight).

**<u>Class of General Unsecured Claims</u>**

8. <u>General Unsecured Claim Holders</u>
   a. **Estimated Amount Owed**: $558,949.00
   b. **Proposed Treatment**: Commencing on the first quarter following the Effective Date of the Plan (the "Initial Payment") and quarterly thereafter for a total of twenty (20) quarters, the Debtor shall make payments on a *pro rata* basis to undisputed, liquidated, non-contingent claims as scheduled or filed, subject to timely objection to the validity or extent of each claim holders (the "Allowed Unsecured Claims") in an amount equal to the annual projected net cash flow of the Debtor for the corresponding year (as projected in the Cash Flow Analysis.) Over the life of the Plan, Class Eight will share *pro rata* in the total amount of $95,075.30 (17% of the total General Unsecured Claims).

**ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR**

**1.1** <u>**Nature of the Debtor's Business**</u>

The Debtor is an electrical service and maintenance company servicing New Jersey and surrounding area. Services provided by Debtor include electrical service and maintenance of commercial and residential properties.

**1.2** <u>**History of Business Operations of the Debtor**</u>

The Debtor opened for business towards the end of 2010, and revenue was steadily increasing year after year until 2020. Profitability suffered as a result of the Covid-19 Pandemic and the Debtor began to fall behind on its debts. To maintain operational during covid Debtor had to rely on short term high interest loans that were automatically withdrawn from the Debtor's account on a weekly basis. Unfortunately, the Debtor was not making enough income to pay these loans back debtor had to keep borrowing from these short-term lenders to payback the loans owed. After the Debtor could no longer borrow more money to pay back these loans, the Debtor filed the instant bankruptcy to stop this vicious financial cycle and reorganize its debts.

**1.3** <u>**Filing of the Debtor's Chapter 11 Case**</u>

On November 15, 2022, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Newark, New Jersey.

**1.4** <u>**Legal Structure and Ownership**</u>

The Debtor is a Limited Liability Company.

**1.5** <u>**Debtor's Assets**</u>

The Debtor's assets and determination of values are identified on the Debtor's Schedules A and B of the petition attached hereto as **<u>Exhibit A</u>**.

**1.6** <u>**Debtor's Liabilities**</u>

The Debtor's liabilities are identified on Schedules D, E, and F as included in the petition and as amended and filed on the docket of this case.

**1.7** <u>**Current and Historical Financial Conditions**</u>

Notwithstanding the financial challenges, and after the filing of the bankruptcy, the Debtor has been able to meet its post-bankruptcy obligations and has seen an upward trend in profitability. In addition, the Debtor has reduced its employees and unnecessary expenses in order to maximize the return for all creditors. The Debtor's relevant current and financial data can be found on the Debtor's Monthly Operating Reports all of which can be accessed through Debtor's Bankruptcy

Court Docket. The Debtor's federal income tax returns are annexed hereto as **Exhibit B**. Confidential personal information has been redacted.

### 1.8 Events Leading to the Filing of the Bankruptcy Case

The Debtor opened for business towards the end of 2010, and revenue was steadily increasing year after year until 2020. Profitability suffered as a result of the Covid-19 Pandemic and the Debtor began to fall behind on its debts. To maintain operational during covid Debtor had to rely on short term high interest loans that were automatically withdrawn from the Debtor's account on a weekly basis. Unfortunately, the Debtor was not making enough income to pay these loans back debtor had to keep borrowing from these short-term lenders to payback the loans owed. After the Debtor could no longer borrow more money to pay back these loans.

### 1.9 Significant Events During the Bankruptcy Case

The following is a chronological list of significant events which have occurred during this case:

1) On November 15, 2022, the Debtor filed a Chapter 11 voluntary petition (Docket No. 1).
2) On December 12, 2022, the Debtor filed its, the Debtor filed its Missing Schedules and other pertinent financial documents (Docket No. 15).
3) On December 13, 2022, the Court entered an Order granting the Debtor's Application to Employ Scura, Wigfield, Heyer, Stevens & Cammarota, LLP as Counsel for Debtor (Docket No. 18).
4) On December 15, 2022, the Office of United States Trustee held the 341a Meeting of Creditors and the Initial Debtor Interview.
5) On December 27, 2022, Debtor's bankruptcy Counsel filed a Subchapter V Status Report (Docket No. 21).
6) On January 10, 2023, the Court held the first Status Conference.
7) On January 10, 2023, the Court entered an Order amending the Debtor's Schedules D,E and F.
8) On January 30, 2023, the Debtor filed a Motion Authorizing the Use of Cash Collateral with a hearing scheduled for February 21, 2023.
9) The deadline to file a Subchapter V Chapter 11 Plan of Reorganization is February 14, 2022.

### 1.10 Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

## ARTICLE 2: THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

## 2.1    Unclassified Claims

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

### A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases.

These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | Paid in full in the normal course of business. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $0.00 | Paid in full in the normal course of business. |
| Clerk's Office fees | $0.00 | Paid in full on Effective Date or pursuant to Court order |
| Scura, Wigfield, Heyer, Stevens & Cammarota, LLP | $25,000.00 | Paid on the Effective Date of the Plan pursuant to Order authorizing fees. |
| Joseph L. Schwartz - Subchapter V Trustee | $10,0000.00 | Paid on the Effective Date of the Plan pursuant to Order authorizing fees. |
| TOTAL | $35,000.00 | |

B.  Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

| Name Of Government Entity with a Tax Claim | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Internal Revenue Service ("IRS") – Proof of Claim No. 2. Estimated claim | $36,951.07 | Accordingly, the Debtor shall pay the holder of this claim in accordance to its Amended Proof of Claim as follows: |

| | | |
|---|---|---|
| stemming from 2022 Federal Returns. However, the Debtor has not filed its 2022 tax returns as of yet. | | Commencing on the first day of the first month following the Effective Date of the Plan (the "Initial Payment") and quarterly thereafter for a total of twenty (20) quarters, payment will be made to the holder of this claim in the amount of 1/20th of its Allowed Claim including interest calculated at 7.25% interest per annum. |
| State of New Jersey – Division of Taxation ("State of NJ") – Proof of Claim No. 5. Estimated claim stemming from 2022 Federal Returns. However, the Debtor has not filed its 2022 tax returns as of yet. | $4,678.23 | Accordingly, the Debtor shall pay the holder of this claim in accordance to its Amended Proof of Claim as follows: Commencing on the first day of the first month following the Effective Date of the Plan (the "Initial Payment") and quarterly thereafter for a total of twenty (20) quarters, payment will be made to the holder of this claim in the amount of 1/20th of its Allowed Claim including interest calculated at 7.25% interest per annum. |

## 2.2    Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.   Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class | Name of Claimant | Impaired | Treatment |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| 1 | Class One consists of a Secured Claim held by GFE NY, LLC. This creditor has a scheduled claim in the secured amount of $117,535.00 resulting from a business loan extended to the Debtor and secured by all of the assets of the Debtor (UCC# - 55536774). In accordance with the Debtor's Liquidation Analysis (Exhibit D) the Debtor's non-exempt equity in assets totals $165,008.54. Therefore, the Secured Creditor's claim is fully protected by the assets of the Debtor. | Yes | The holder of this claim shall be paid in the amount of its Allowed Secured Claim including interest calculated at 7.00% interest per annum. The total amount to be paid under the Plan is $139,712.73 which shall be paid as follows:<br><br>Commencing on the Effective Date of the Plan (the "Initial Payment") and quarterly thereafter for twenty (20) consecutive quarters, the Debtor shall make quarterly payments to the Class One claim holder as per below:<br><br>Year 1: $27,942.52 ($6,985.63 per quarter)<br>Year 2: $27,942.52 ($6,985.63 per quarter)<br>Year 3: $27,942.52 ($6,985.63 per quarter)<br>Year 4: $27,942.52 ($6,985.63 per quarter)<br>Year 5: $27,942.52 ($6,985.63 per quarter)<br><br>If the Debtor fails to make any payment called for under this Plan to the holder of a claim or fails to abide by any other term of this Plan applicable to the holder of a claim, then the holder may declare that the Debtor is in default of the Plan. Once the Debtor is in default, notice of default shall be sent to Debtor and Debtor's counsel. Failure to declare a default does not constitute a waiver of the right to declare that the Debtor is in default. If the holder of a claim in this class declares the Debtor to be in default of its obligation under the Plan, and the Debtor fails to cure such default within fourteen (14) days thereof, then the entire liability, together with any unpaid current liabilities, shall become due and payable immediately. Upon notice of default and the failure to cure, as set forth above, the holder may collect any unpaid liabilities without the need for Bankruptcy Court approval. This shall include full reinstatement of collection powers and rights as they existed prior to the filing of the bankruptcy petition in this case, including but not limited to, the filing of the notice of liens, and the powers of levy, seizure, and the sale. |
| 2 | Class Two consists of a Secured Claim held by Apex Funding Source, LLC ("Apex"). This creditor filed Proof of Claim No. 3 in the secured amount of 263,847.00 resulting from a business loan extended to the Debtor and secured by all of the assets of the Debtor (UCC# - 55716635). In accordance with the Debtor's the Secured Creditor's claim is partially secured by the Debtor's assets up to $47,473.54. | Yes | Pay Value of Collateral Over Time.<br><br>In accordance with sections 506(a), 506(d) of the Bankruptcy Code the Class Two claim will be bifurcated to an Allowed Secured Claim in the amount of $47,473.54 (payable at an interest rate of 7%) and a General Unsecured claim in the amount of $216,373.46. The creditor shall retain its lien on any personal property up to the amount of its secured claim in order to secure payment of its Allowed Secured Claim.<br><br>The Allowed Secured Claim will be paid as follows: |

| | | | |
|---|---|---|---|
| | | | Commencing on the Effective Date of the Plan (the "Initial Payment") and quarterly thereafter for twenty (20) consecutive quarters, the Debtor shall make quarterly payments to the Class Two claim holder as per below:<br><br>Year 1: $11,286.28 ($2,821.57 per quarter)<br>Year 2: $11,286.28 ($2,821.57 per quarter)<br>Year 3: $11,286.28 ($2,821.57 per quarter)<br>Year 4: $11,286.28 ($2,821.57 per quarter)<br>Year 5: $11,286.28 ($2,821.57 per quarter)<br><br>The remaining portion of this claim ($216,373.46) shall be paid together and in accordance with General Unsecured Creditors (Class Eight).<br><br>If the Debtor fails to make any payment called for under this Plan to the holder of a claim or fails to abide by any other term of this Plan applicable to the holder of a claim, then the holder may declare that the Debtor is in default of the Plan. Once the Debtor is in default, notice of default shall be sent to Debtor and Debtor's counsel. Failure to declare a default does not constitute a waiver of the right to declare that the Debtor is in default. If the holder of a claim in this class declares the Debtor to be in default of its obligation under the Plan, and the Debtor fails to cure such default within fourteen (14) days thereof, then the entire liability, together with any unpaid current liabilities, shall become due and payable immediately. Upon notice of default and the failure to cure, as set forth above, the holder may collect any unpaid liabilities without the need for Bankruptcy Court approval. This shall include full reinstatement of collection powers and rights as they existed prior to the filing of the bankruptcy petition in this case, including but not limited to, the filing of the notice of liens, and the powers of levy, seizure, and the sale. |
| 3 | Class Three consists of a Secured Claim held by Clover Commercial Corp. This Secured Creditor has a scheduled claim in the secured amount of $1,953.25 and secured by a 2005 Chevrolet Astro Van as listed in the Debtor's petition schedules. | No | Rights Unaltered.<br><br>The Debtor will leave unaltered the Secured Creditor's contractual, legal, and equitable rights with respect to its collateral. Debtor shall continue making payments to the Class Three claim holder in accordance with the pre-petition financing agreement between the Debtor and Class Three claim holder. |
| 4 | Class Four consists of a Secured Claim held by Toyota Financial Motor Credit Corp. This Secured Creditor has a scheduled claim in the | No | Rights Unaltered.<br><br>The Debtor will leave unaltered the Secured Creditor's contractual, legal, and equitable rights |

| | | | |
|---|---|---|---|
| | secured amount of $20,015.00 and secured by a 2020 Dodge Ram ProMaster as listed in the Debtor's petition schedules. | | with respect to its collateral. Debtor shall continue making payments to the Class Four claim holder in accordance with the pre-petition financing agreement between the Debtor and Class Four claim holder. |
| 5 | Class Five consists of an alleged Secured Claim held Forever Funding, LLC ("Forever Funding"). This creditor filed Proof of Claim No. 4 in the secured amount of $247,335.00 resulting from a business loan extended to the Debtor and secured by all of the assets of the Debtor (UCC# - 66778108). However, the Secured Creditor did not perfect its lien prior to the Debtor's bankruptcy filing as the Secured Creditor's UCC was filed after the Petition Date[1]. If a creditor fails to properly perfect under applicable state law, its claim is deemed unperfected under the Bankruptcy Code and the creditor's unperfected lien will not stand against trustee's avoidance power pursuant to Section 544(a)(3). *Knopfler v. Addison Bldg. Material Co.*, 149 B.R. 522, 528-529 (Bankr. N.D. Ill. 1993). | Yes | The Debtor asserts that the Forever Funding's lien is an unperfected lien on the assets of the Debtor and subject to the trustee's avoidance powers pursuant to Section 544(a)(3). Therefore, Class Five's lien will be declared void pursuant to Section 544(a)(3) & Section 506(a) and (d) of the Bankruptcy Code. Accordingly, this creditor shall deliver a fully executed and acknowledged Warrant of Satisfaction of its judgment to the Debtor within fifteen (15) days of the Bankruptcy Court's granting of the Debtor's discharge in accordance with 11 U.S.C. § 1141. In the event this creditor fails to execute and acknowledge a Warrant of Satisfaction within the requisite time period, the Debtor or the Disbursing Agent shall be authorized to do so. The entirety of the claim in this class will be paid together and in accordance with General Unsecured Creditors (Class Eight). |
| 6 | Class Six consists of a Secured Claim held by CT Corporation Systems. This Creditor has a claim secured by all of the assets of the Debtor (UCC# - 55284152). In accordance with the Liquidation Analysis (Exhibit D), there is no equity in the Debtor's assets beyond the claims of the priority lien holders. Therefore, the Class Six claim is fully undersecured. | Yes | In accordance with sections 506(a) and (d) of the Bankruptcy Code the Allowed Claim will be fixed to an amount of $0 and will be paid nothing as a secured creditor. Therefore, Class Six's lien will be declared void pursuant to Sections 506(a) and (d) of the Bankruptcy Code. Accordingly, this creditor shall deliver a fully executed and acknowledged Warrant of Satisfaction of its judgment to the Debtor within fifteen (15) days of the Bankruptcy Court's granting of the Debtor's discharge in accordance with 11 U.S.C. § 1141. In the event this creditor fails to execute and acknowledge a Warrant of Satisfaction within the requisite time period, the Debtor or the Disbursing Agent shall be authorized to do so. The entirety of the claim in this class will be paid together and in accordance with General Unsecured Creditors (Class Eight). |
| 7 | Class Seven consists of a Secured Claim held by Corporation Service Company. This Creditor has a claim | | In accordance with sections 506(a) and (d) of the Bankruptcy Code the Allowed Claim will be fixed to an amount of $0 and will be paid nothing |

---

[1] Forever Funding, LLC filed UCC#66778108 on November 16, 2022 – one day after the Petition Date (November 15, 2022).

| | | |
|---|---|---|
| | secured by all of the assets of the Debtor (UCC# - 55291644). In accordance with the Liquidation Analysis (Exhibit D), there is no equity in the Debtor's assets beyond the claims of the priority lien holders. Therefore, the Class Seven claim is fully undersecured. | as a secured creditor. Therefore, Class Seven's lien will be declared void pursuant to Sections 506(a) and (d) of the Bankruptcy Code. Accordingly, this creditor shall deliver a fully executed and acknowledged Warrant of Satisfaction of its judgment to the Debtor within fifteen (15) days of the Bankruptcy Court's granting of the Debtor's discharge in accordance with 11 U.S.C. § 1141. In the event this creditor fails to execute and acknowledge a Warrant of Satisfaction within the requisite time period, the Debtor or the Disbursing Agent shall be authorized to do so.<br><br>The entirety of the claim in this class will be paid together and in accordance with General Unsecured Creditors (Class Eight). |

B.   Classes of Priority Unsecured Claims

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment. The Debtor does not owe any Priority Unsecured Claims.

C.   Class[es] of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class Eight, which contains general unsecured claims against the Debtor:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 8 | Class Eight holders of General Unsecured Claims, including allowed deficiency claims of creditors in prior classes and the claims of Creditors not otherwise classified under the Plan. Subject to objection of claims in accordance with the Plan, the Debtor estimates the amount of claims in this class to total $558,949.00[2] | Yes | In accordance with the Debtor's Cash Flow Analysis (**Exhibit C**) the Debtor has a 5-Year Projected Disposable Income in the amount of $95,075.30, all of which shall be paid as follows:<br><br>Commencing on the first day of the fifth month following the Effective Date of the Plan (the "Initial Payment") and quarterly thereafter for a total of twenty (20) quarters, the Debtor shall make payments on a *pro rata* basis to undisputed, liquidated, non-contingent claims as scheduled or filed, subject to timely objection to the validity or extent of each claim holders (the "Allowed Unsecured Claims") in an amount equal to the annual projected disposable income in the corresponding year (as projected in the Cash Flow Analysis). The annual projected disposable income is as follows:<br><br>Year 1 – $4,377.13<br><br>Year 2 – $20,981.88<br><br>Year 3 – $25,478.50<br><br>Year 4 – $19,923.98<br><br>Year 5 – $24,313.81<br><br>**Total Disposable Income – $95,075.30** |

### D.  Class[es] of Equity Interest Holders

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company ("LLC"), the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| CLASS | DESCRIPTION | IMPAIRED | TREATMENT |
|---|---|---|---|
|  |  |  |  |

---

[2] The unsecured creditor pool includes the unsecured deficiency claims of Classes Two, Five, Six, and Seven as referenced above.

| 9 | Manuel Botero | No | The ownership interests of the principal in the assets of the Debtor shall not be altered as a consequence of the Plan. |
|---|---|---|---|

### 2.3     Estimated Number and Amount of Claims Objections

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

### 2.4     Treatment of Executory Contracts and Unexpired Leases

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding her Executory Contracts (which include its unexpired leases) and the impact such intentions would have on other parties to the contracts.

All executory contracts and unexpired leases which have not already been either assumed or rejected by order of this Court or listed in this Plan will be conclusively deemed to have been rejected upon the entry of the order confirming the Plan. The Debtor will be assuming the following lease:

| Lease Agreement | Collateral | Assume/Reject |
|---|---|---|
| Partner Construction Services Corp. | Office Space – 10 Washington Street, Hawthorne, NJ 07506 | Assume |

### 2.5     Means for Implementation of the Plan

The plan will be funded from a combination of (i) funds on hand in the estate at the time of Confirmation; and (ii) net cash flow of the Reorganized Debtor received during the sixty months of the Plan beginning on the Effect Date of the Plan.

### 2.6     __Payments__

Whether the Plan is confirmed pursuant to §§ 1191(a) or (b), payments to Creditors provided for in the Plan shall be made by the Debtor who shall serve as the Disbursing Agent.

### 2.7     __Post-Confirmation Management__

The Debtor's principal, Manuel Botero, will continue the post-confirmation management of the day-to-day business affairs of the Debtor.

### 2.8     __Tax Consequences of the Plan__

Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/ or advisors.

### 2.9     __Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan__

The Debtor has provided projected financial information. Those projections are listed in Exhibit C.

## ARTICLE 3: FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1     __Ability to Initially Fund Plan__

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. The Plan will be funded from a combination of funds on hand in the estate at the time of Confirmation; and net cash flow of the Reorganized Debtor received during the sixty months of the Plan beginning on the Effective date.

### 3.2     __Ability to Make Future Plan Payments and Operate Without Further Reorganization__

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the execution of the Plan. Those cash flow projections are annex as Exhibit C (referenced in § 2.9, above).

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

# ARTICLE 4: LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit D**. The Debtor submits that the Creditors will receive more in a Chapter 11 than what the Creditors would receive in a Chapter 7 liquidation.

# ARTICLE 5: DISCHARGE

## 5.1 Discharge

**If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code. Pursuant to 11 U.S.C. §1183(c)(1), if the Plan is confirmed under § 1191(a), the services of the Subchapter V Trustee shall be terminated upon substantial consummation of the confirmed Plan.

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

Furthermore, If the Plan is confirmed under § 1191(b), the Subchapter V Trustee's appointment shall remain in place and extend post confirmation. However, the Subchapter V Trustee's post-confirmation duties shall be limited to the monitoring of activities in the case to ensure payments under the confirmed plan commence.

# ARTICLE 6: GENERAL PROVISIONS

## 6.1 Title to Assets

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2    Binding Effect

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity

### 6.3    Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4    Retention of Jurisdiction by the Bankruptcy Court

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters:  (i)  to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan;  (ii) to rule on any modification of the Plan proposed under section 1193;  (iii)  to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and  (v)  to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5    Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6    Modification of Plan

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including re-voting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7: ATTACHMENTS

The following documents accompany the Plan:

[X]    Exhibit A – Debtor's Schedule A/B
[X]    Exhibit B – Debtor's Tax Returns
[X]    Exhibit C - Debtor's Five-Year Cash Flow Statement
[X]    Exhibit D - Debtor's Liquidation Analysis

## ARTICLE 8: FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?**    Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a debtor attempts to restructure the claims held against it.  Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11.  When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11.  The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?**    In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan.  If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?**    To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor.  If you do not have any collateral, your claim is unsecured.  The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has

provided for you if the Plan is confirmed. Section 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Section 2.2 of the Reorganization Plan identifies the classes of creditors whose claims are impaired. If you claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is seven (7) days before the Confirmation hearing date. Ballots should be mailed to the following address:

**Scura, Wigfield, Heyer, Stevens & Cammarota, LLP**
**c/o Carlos D. Martinez, Esq.**
**1599 Hamburg Turnpike**
**Wayne, New Jersey 07470**

**How Do I Determine When and How Much I Will Be Paid?** In Section 2.2 the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9: DEFINITIONS

**9.1** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2     Administrative Claimant**:   Any person entitled to payment of an Administration Expense.

**9.3     Administrative Convenience Class**:  A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4     Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5     Administrative Tax Claim**:   Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6     Allowed Claim**:  Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7     Allowed Priority Tax Claim**:  A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8     Allowed Secured Claim**:  Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.9     Allowed Unsecured Claim**:  An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10    Bankruptcy Code or Code**:   The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11    Bankruptcy Court**:  The United States Bankruptcy Court for the District of New Jersey.

**9.12    Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**9.13   Cash**:  Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14   Chapter 11 Case**:  This case under chapter 11 of the Bankruptcy Code in which the Sparks Electric, LLC is the Debtor-in-Possession.

**9.15   Claim**:  Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16   Class**:  A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17   Confirmation**:  The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18   Confirmation Date**:  The date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19   Confirmation Hearing**:  The hearing to be held on <u>(TBD)</u> to consider confirmation of the Plan.

**9.20   Confirmation Order**:  An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21   Creditor**:  Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22   Debtor and Debtor-in-Possession**:  Sparks Electric, LLC is the debtor-in-possession in this Chapter 11 Case.

**9.23   Disbursing Agent:**  The Debtor will serve as the Disbursing Agent.

**9.24   Disputed Claim**:  Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.25   Distributions**:  The property required by the Plan to be distributed to the holders of Allowed Claims

**9.26    Effective Date**:  Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.27    Equity Interest**:   Any share, capital stock, partnership, member or similar interest in any entity, and any option, warrant, right or security (including debt securities) convertible, exchangeable or exercisable therefor. If the Debtor is an induvial, Equity Interest is the Debtor's ownership interest in any and all property.

**9.28    Executory Contracts**:   All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.29    Final Order**:  An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.30    IRC**:  The Internal Revenue Code.

**9.31    Petition Date**:  November 15, 2022, the date the chapter 11 petition for relief was filed.

**9.32    Plan**:  This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.33    Priority Tax Claim**:  Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.34    Reorganized Debtor**:  The Debtor after the Effective Date.

**9.35    Schedules**:   Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.36    Secured Creditor**:  Any creditor that holds a Claim that is secured by property of the Debtor.

**9.37    Trustee**:  The trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.38    Unsecured Creditor**:  Any Creditor that holds a Claim in the Chapter 11 case which is not a Secured Claim.